IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Cooper Industries, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action 4:13-cv-00575 |
| | § | |
| Continental Casualty Company, | § | |
| Transportation Insurance Company, | § | |
| and The Continental Insurance | § | |
| Company, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants/Counter-Plaintiffs Continental Casualty Company; Transportation Insurance Company; and The Continental Insurance Company, as successor-in-interest to Harbor Insurance Company and successor by merger to Fidelity & Casualty Company of New York (collectively "CNA"), for their response to Cooper Industries, LLC's Motion for Summary Judgment state as follows.

# TABLE OF AUTHORITIES

**Cases**

*Am. Manufacturers Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154 ............................9

*Aranda v. Ins. Co. of North America*, 748 S.W.2d 210 ...........................................16

*Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W. 3d 20 ...........................8

*Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d..............................................9

*Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990) ....................9

*Hartland v. Progressive Cty Mut. Ins. Co.*, 290 S.W.3d 318 .................................18

*HECI Exploration Co. v. Neel*, 982 S.W.2d 881 ....................................................20

*Khan v. Trans Chemical, Ltd.*, 178 Fed. Appx. 419 ...............................................21

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829 .................9

*Lombana v. AIG Am. Gen. Life Ins. Co.*, NO. 01-12-00168-CV, 2014 Tex. App.

   LEXIS 2302, at *19 ..............................................................................................18

*McMillin v. State Farm Lloyds*, 180 S.W. 3d 183 .................................................13

*Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515................................16

*Milton v. Ark. Shrimp Coop.*, 668 S.W.2d 735 ........................................................9

*Republic Ins. Co. v. Stoker*, 903 S.W.2d 338.........................................................13

*Sec. Mut. Cas. Co. v. Johnson*, 584 S.W. 2d 703 ...................................................8

*Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123............................8

*Times-Picayune Publ'g Corp. v. Zurich Am. Ins. Co.*, 421 F.3d 328 ......................8

*Times-Picayune*, 421 F.3d at 331...........................................................................8

*Topalian v. Ehrman*, 954 F.2d 1125 .......................................................................8

*Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267 .........................................8

**Rules**

F𝐸𝐷. C𝐼𝑉. P. 56(a)....................................................................................................8

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY ................................................................................................1

II.     INTRODUCTION ......................................................................................3

III.    FACTS ........................................................................................................5

IV.     ARGUMENT..............................................................................................7

        A.      SUMMARY JUDGMENT STANDARD............................................8

        B.      COOPER'S MOTION FAILS BECAUSE IT CANNOT MEET
                ITS BURDEN OF DEMONSTRATING WHETHER THE
                UNDERLYING COMPLAINTS TRIGGER THE CNA
                POLICIES ...................................................................................10

        C.      COOPER MISTATES THE FACTUAL RECORD IN AN
                ATTEMPT TO CIRCUMVENT ITS PROBLEMS
                DEMONSTRATING THAT THE UNDERLYING
                COMPLAINTS TRIGGER CNA'S POLICIES ...............................12

        D.      BECAUSE COOPER CANNOT DEMONSTRATE IT IS
                ENTITLED TO COVERAGE IN CONNECTION WITH THE
                UNDERLYING COMPLAINTS, THE COURT SHOULD
                DENY COOPER SUMMARY JUDGMENT WITH RESPECT
                TO THE "BAD FAITH" COUNTS IN THE COMPLAINT ...........13

        E.      COOPER'S COUNTS III AND IV ARE BARRED BY THE
                APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS .........14

        F.      COOPER'S COUNTS III FAILS TO STATE A CLAIM
                UNDER TEXAS LAW TO THE EXTENT IT RELIES ON A
                "COMMON LAW" BAD FAITH THEORY ...................................14

        G.      COOPER'S CLAIMS ARE BARRED BECAUSE IT HAS
                FAILED TO COMPLY WITH THE CONDITION
                PRECEDENT OF THE PAYMENT OF PREMIUMS. ...................17

        H.      THE STATUTE OF LIMTATIONS DOES NOT BAR
                COUNTS II AND V OF CNA'S COUNTERCLAIMS ...................20

iii

I.     CNA HAS PRESENTED SUFFICIENT EVIDENCE TO
       DEFEAT COOPER'S CONTENTION THAT COUNTS III &
       IV OF THE COUNTERCLAIMS PRESENT NO ISSUE OF
       MATERIAL FACT ..........................................................................22

**V.    CONCLUSION ...........................................................................23**

## I.   <u>SUMMARY</u>

This case concerns whether the defendants have an obligation to defend Cooper in several asbestos personal injury lawsuits and, if so, what Cooper's obligations are to pay retrospective premiums for that defense.  The allegations made in the underlying complaints are at the center of that inquiry.   As     the Defendants' affirmative motion for summary judgment explains, it has been previously impossible to answer that question in this case because Cooper steadfastly refused to produce the complaints to the Defendants.

Cooper buries the discussion of the issue in a footnote and pretends that it has offered this Court only a small sample of the complaints to ease the burden on the Court and to enhance administrative efficiency instead of acknowledging that it has failed to proffer "thousands" of complaints necessary for the Court's determination of whether CNA owes coverage under its policies.

Texas courts follow the "eight corners" rule requiring a comparison of the allegations of an underlying complaint to the terms of the relevant insurance policy to determine whether an insurer has a duty to defend.  Accordingly, Cooper cannot succeed on its motion.

Cooper is unable to prevail at the dispositive motion stage on the issue of whether CNA owes a duty to defend in connection with the large majority of underlying complaints.  Accordingly, Cooper cannot succeed on its motion for

summary judgment as to Counts III and IV of its Complaint.  Likewise, Cooper's Count III is barred by the applicable statute of limitations, and its common law "bad faith" claim in Count IV is not recognized under Texas law.

The CNA policies include retrospective premium obligations and "claim service agreements" that require Cooper to either advance funds before CNA has an obligation to provide a defense or indemnity of a claim or pay "retrospective premium" that will often be more than the amount CNA would expend in the defense or indemnity of a claim.  Under Texas law, the payment of premiums is a condition precedent to the existence of liability of the insurer.  Cooper has indicated that it may not pay retrospective premiums and has not otherwise addressed the issue of advancement of funds under the claim service agreement.

Cooper's argument that the statute of limitations bars CNA's counterclaims for breach of contract fails for at least two reasons.  First, Cooper has taken the position that it did not assign the insurance policies, but assigned only the proceeds.  Cooper's Rule 30(b)(6) witness flatly refused to answer any questions about whether Cooper had assigned rights to other parties, and thus questions abound as to if and when the breach actually occurred. Second, assuming the breach occurred when Cooper claims it did, the statute of limitations would not bar CNA's claims to the extent damages incurred in connection with such claims began accruing in 2012, when CNA was sued in Adams County, Illinois.

2

Finally, CNA has presented sufficient evidence to defeat Cooper's contention that it is entitled to summary judgment as to Counts III and IV of the Counterclaims. Cooper's own document production in this case provides sufficient evidence as to the allegations of Counts III and IV of CNA's Counterclaims.

## II.   **INTRODUCTION**

This is case is primarily about whether the Defendants have an obligation to defend Cooper in numerous asbestos personal injury lawsuits and, if so, what Cooper's obligations are to pay retrospective premiums for that defense. The allegations made in the underlying complaints are at the center of that inquiry. As the Defendants' affirmative motion for summary judgment explains, it has been previously impossible to answer that question in this case because Cooper steadfastly refused to produce the complaints to the Defendants. Cooper buries the discussion of the issue in a footnote and pretends that it has offered this Court only a small sample of the complaints to ease the burden on the Court and to enhance administrative efficiency instead of straightforwardly acknowledging that it had not produced the complaints. Magistrate Judge Smith recently granted the Defendants' motion to compel production of those documents – after the date that this Court set for the close of discovery – and the Defendants received Cooper's production of those complaints one business day ago. Only after CNA is given a proper opportunity to assess those complaints will it be possible for this Court to

have any hope of resolving the legal dispute between the parties – let alone grant summary judgment to Cooper.

It is axiomatic that under Texas law courts determine the duty to defend by comparing the allegations of the underlying complaint with the terms of the applicable insurance policy.  Under the guise of seeking "[t]o avoid inundating the Court unnecessarily with copies of each of the thousands of complaints," Plaintiff asks this Court to ignore the law and grant summary judgment in its favor.  (*See* Motion at 3, n.1.).

There is no question that Cooper must prove as an initial matter that each of the underlying asbestos complaints triggers one of the Defendants' insurance policies.  Cooper's decision to attach "ten representative samples" is insufficient to meet its burden.  Cooper cannot fairly ask this Court to grant summary judgment in its favor and hold that Defendants have a duty to defend relating to "thousands of complaints" where Cooper does not provide the Court with those complaints.[1] This Court should deny Plaintiff's Motion.

---

[1] Cooper produced no underlying complaints prior to the close of discovery on May 12, 2014.  CNA moved to compel the production of those complaints prior to the discovery close date.  After a hearing on May 13, 2014, the Magistrate ordered Cooper to produce the underlying complaints.

III.   **FACTS**

Cooper's Motion is premised upon an incomplete recitation of the facts. Cooper's story is that it has tendered thousands of asbestos bodily injury claims to CNA since 2006.  (Motion at 1.)  Cooper asserts that in response, CNA "did nothing."  (*Id.*)  Discovery adduced to date strongly refutes Cooper's one-sided version of this dispute.

Cooper asserts that since "2006," it has tendered thousands of asbestos bodily injury claims to CNA.  (Motion at 1.)  In fact, Cooper and CNA discussed these claims as early as 2004.  (*See* Exhibit A to Mertes Aff.)  In a March 10, 2004 email to Nancy Mollers of Cooper, David Steiger of CNA emailed Ms. Mollers seeking information relating to Cooper's asbestos cases.  (*Id.*)  Far from "doing nothing," CNA was involved in the earliest stages asking Cooper questions about the asbestos claims.

That contact continued throughout the years, primarily in the form of discussions between CNA and Cooper relating to the asbestos claims as well as other claims for which Cooper sought coverage from CNA.  (Ex. A to Motion 71:18-72:13.)[2]  As CNA's corporate representative testified:

> A.    … My understanding of the Cooper asbestos claims is that
> CNA has had some conversations with Cooper over time, oftentimes

---

[2] Additional relevant portions the transcript are attached as Exhibit G to the Mertes Aff.

in conjunction with other Cooper matters that were pending and more pressing, asking about the underlying Cooper asbestos matters. And I had some of those conversations myself with Mr. Fogle. And he actually did provide some spread sheet information, and I had some follow-up questions that he actually hadn't gotten back to me on before suit was filed.

Q.     So that was you that actually was having these conversations?

A.     I had some of the conversations. Others would have involved people like Dave Steiger or Amy King. Oftentimes, counsel was involved in those because as I said, they tended to arise in the context of other bigger matters where we were talking about Pneumo Abex, or we were talking about Cooper Cameron.

(*Id.*)

Discovery has also made clear that CNA never "abandoned" Cooper. (Motion at 1.)  In the notice letters Cooper relies on so heavily, Cooper advised CNA and other carriers that it had retained its own defense counsel and was, in fact, defending itself.  (*See, e.g.,* Exhibit F-17 to Motion.  ["Mr. C. Scott Reese of Cooch & Taylor in Wilmington, DE is defending these matters and we will keep you informed regarding significant developments."].)  Despite assertions that Cooper or its defense counsel would keep CNA apprised of "significant developments," the record is devoid of any such appraisals.  Further, Cooper has both national counsel and local counsel and receives assistance from Marsh in managing the underlying claims at issue in this lawsuit.  (*See, e.g.,* Cooper Rule 30(b)(6) Dep. ["Cooper Dep."] 47:3; 48:12-49:11.  *See* Ex. B to Mertes Aff.) Cooper was receiving sums from other insurance companies, which helps explain

6

the approximate *nine year* time period between Mr. Steiger's 2004 email to Nancy Mollers regarding some of the asbestos claims and Cooper's filing of this lawsuit. (Ex. A to Motion 86:24-87:18.)   Such a delay makes no sense under Cooper's factual narration.

Additionally, CNA's claim handler witnesses also testified that discussions continued between Cooper and CNA through the years Cooper provided notice of the asbestos claims and that such discussions were part of an ongoing colloquy between Cooper and CNA regarding a number of different claims.  (*See, e.g.,* Ex. C to Mertes Aff. [A. King Dep.] 106:7-106:12; Ex. D to Mertes Aff. [J. Groszek Dep.] 30:14-30:22.)

## IV.   <u>ARGUMENT</u>

Cooper's Motion should be denied for four reasons.  First, because it fails to present the underlying asbestos complaints to the Court for review, Cooper cannot meet its burden of proving that the individual underlying complaints for which it seeks coverage trigger the CNA policies.  Second, Cooper presents a one-sided recitation of facts that are in dispute and ignores pertinent deposition testimony of CNA's Rule 30(b)(6) deponent.  The factual record adduced through discovery suggests judgment in favor of CNA is appropriate, or that at a minimum material factual questions indicate that summary judgment in Cooper's favor is inappropriate.  Third, because it cannot meet its initial burden of proving CNA

owes it a duty to defend, summary judgment on Cooper's "bad faith" counts is unwarranted.   Lastly, Cooper is not entitled to summary judgment on CNA's Counterclaims as the Motion ignores the plain language of the insurance policies at issue.

### A.   SUMMARY JUDGMENT STANDARD

A party may, at any time, move for a summary judgment in the party's favor as to all or any counts.   FED. R. CIV. P. 56(a).   The court should render a summary judgment if the pleadings and discovery on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.   *Id.*   Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).   The Court is to view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment.   *Eastman Kodak Co. v. Image Technical Servs*, 504 U.S. 451, 456-58 (1992).   However, a party opposing summary judgment may not rely on mere conclusory allegations or denials in its pleadings to overcome summary judgment.   FED. R. CIV. P. 56(c); *see Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

8

Courts construe insurance policies using standard principles of contract interpretation. *Times-Picayune Publ'g Corp. v. Zurich Am. Ins. Co.*, 421 F.3d 328, 331 (5th Cir. 2005) (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990)); *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004). "Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intend a different, technical meaning." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W. 3d 20, 23 (Tex. 2008); *see also Sec. Mut. Cas. Co. v. Johnson*, 584 S.W. 2d 703, 704 (Tex. 1979) ("Terms used in an insurance contract are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense."). The Court should consider the policy as a whole, and interpret the policy to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry. *Times-Picayune*, 421 F.3d at 331; *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 841 (Tex. 2010). If a contract is worded so that the Court can give it a certain or definite legal meaning, it is not ambiguous and the Court should construe it as a matter of law. *Am. Manufacturers Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003). Where a technical term is defined in the policy, the Court should use that definition of the term. *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990); *Milton v. Ark. Shrimp Coop.*, 668 S.W.2d 735, 730 (Tex App. –

9

Corpus Christi 1983, writ dism'd) (applying the technical definition of "Act of God").

### B. COOPER'S MOTION FAILS BECAUSE IT CANNOT MEET ITS BURDEN OF DEMONSTRATING WHETHER THE UNDERLYING COMPLAINTS TRIGGER THE CNA POLICIES

Texas courts follow the eight corners rule in determining an insurer's duty to defend. *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy. *Id.* The factual allegations are considered without regard to their truth or falsity, and all doubts regarding the duty to defend are resolved in the insured's favor. *Id.* In reviewing the pleadings and making the foregoing determinations, courts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged. *Id.* The insured has the initial burden to establish coverage under the policy. *Id.* In the context of asbestos bodily injury lawsuits, Texas law on "trigger" – *i.e.*, when covered "bodily injury" occurs under the terms of the policies – is not entirely clear. Here, the particular trigger applied is immaterial

10

because Cooper has not provided the Court with "thousands" of the underlying complaints for which it seeks coverage.

In this case, Cooper is missing "four corners" of the picture for the vast majority of the claims for which it seeks coverage. Without the underlying complaints, Cooper cannot meet its initial burden of establishing that the underlying asbestos lawsuits trigger the CNA Policies. Cooper's Rule 30(b)(6) witness testified that Cooper does not even maintain the complaints in its possession. (Cooper Dep. 46:21-47:7.) As a result, this Court should enter judgment in CNA's favor on Counts I and II of Cooper's complaint and should deny Cooper's Motion.

Because *CNA* produced a small subset of the underlying complaints, Cooper's Motion attaches certain of those complaints and calls them a "representative sample." Thus, Cooper has the necessary "eight corners" for purposes of the representative sample. However, Cooper cannot meet its burden with respect to the rest of the "thousands" of underlying complaints. As a result, this Court should deny Cooper's Motion.

**C.**   **COOPER MISTATES THE FACTUAL RECORD IN AN ATTEMPT TO CIRCUMVENT ITS PROBLEMS DEMONSTRATING THAT THE UNDERLYING COMPLAINTS TRIGGER CNA'S POLICIES**

Cooper attempts to overcome its proof problems vis-à-vis the underlying complaints by attempting to mislead the Court into believing that CNA's witnesses have admitted the CNA Policies cover the underlying complaints.  For example, Cooper's Motion states that, "The Policies unambiguously provide coverage and CNA concedes that this case is not a 'fight about whether comprehensive general liability policies might have to respond to asbestos claims."  (Motion at 1.)  Cooper cites to the Rule 30(b)(6) deposition of CNA ("CNA Deposition") as ostensible support for its proposition that CNA has admitted the penultimate issue in this case.  A superficial examination of the deposition testimony elicited in this case refutes that notion.

In its Motion, Cooper cites to Page 90 of the CNA Deposition.  A reading of the testimony on and around that page makes clear that CNA has not admitted the "thousands" of underlying complaints are covered by the CNA Policies.  (*See* Ex. A to Motion.)  Rather, Cooper cherry picks an incomplete answer that was part of a general discussion of comprehensive general liability policies and a specific discussion of Cooper's and CNA's past settlement discussions.  (Ex. A to Motion 86:20-88:12.)  As to the portion that Cooper relies on, the transcript states:

12

Q.      Right.  I understand that.  But otherwise, if you look at the paper itself, this isn't a fight about whether comprehensive general liability policies respond to asbestos claims in that time period.  It has been happening for decades, right?

A.      It's not a fight about whether comprehensive general liability policies might have to respond to asbestos claims.  You know that there are lots of qualifications on something like that. *Obviously, if you're  looking at an individual claim and the date of loss postdates the coverage, you don't respond, things like that.*

(Ex. A to Motion 90:2-90:15.)

Thus, far from admitting that the CNA Policies provide coverage for thousands of underlying complaints that Cooper has not proffered to the Court, the CNA Deposition makes the same point that CNA makes in this response and in its own motion for summary judgment.  Namely, that in order to determine whether the "thousands" of underlying complaints implicate the CNA Policies the Court must actually look at the complaints themselves.  For these reasons, this Court should deny Cooper's Motion.

**D.      BECAUSE COOPER CANNOT DEMONSTRATE IT IS ENTITLED TO COVERAGE IN CONNECTION WITH THE UNDERLYING COMPLAINTS, THE COURT SHOULD DENY COOPER SUMMARY JUDGMENT WITH RESPECT TO THE "BAD FAITH" COUNTS IN THE COMPLAINT**

Counts III and IV of Cooper's Complaint seek recovery under various bad faith theories against CNA.  Cooper's claims fail as a matter of law because, as discussed above, it cannot prove that it is entitled to coverage under any of the

13

CNA Policies.  Under Texas law, a policyholder cannot recover bad faith damages where a court makes a determination that there is no coverage.  *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).  Moreover, issues attendant to bad faith are generally fact questions not appropriate for resolution at the summary judgment stage.  *See McMillin v. State Farm Lloyds*, 180 S.W. 3d 183, 205 (Tex. App. – Austin 2005, pet. denied) ("Whether conduct is reasonable is ordinarily a question of fact.").  This maxim is particularly true here where there are material issues of fact relating to Counts III and IV of Cooper's Complaint.  Therefore, this Court should deny Cooper's Motion.

E.     <u>COOPER'S COUNTS III AND IV ARE BARRED BY THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS</u>

Cooper has produced a number of documents in this case that reference an initial tender date of the underlying asbestos claims to CNA and others on March 23, 2006.  For example, Cooper has produced what purports to be a July 21, 2006 letter from Nancy Mollers of Cooper to five people that states in part, "[p]ursuant to Bob Teets' letter dated March 23, 2006, enclosed is a copy of the above-captioned complaint involving asbestos exposure allegations against Cooper Industries, Inc."  (*See* Ex. E to Mertes Aff.)  Cooper's corporate representative also testified that Cooper has, "been putting CNA on notice of those cases since 2006."  (Cooper Dep. at 162:21-22).  That same corporate representative testified that the

factual basis for the extra contractual claims was the fact that Cooper had been putting CNA on notice of claims "for many years" and that CNA had not acknowledged coverage to Cooper for that "prolonged time."   (*Id.* at 169:20 – 170:5).

Cooper seeks recovery for alleged violation of Chapters 541 and 542 of the Texas Insurance Code. Assuming for purposes of Cooper's Motion that Cooper can otherwise establish it is entitled to recovery under Chapter 541, its claims would nevertheless be barred by the two-year statute of limitations.  *See* Tex Ins. Code § 541.162.  Similarly, although Chapter 542 does not establish a limitations period, Cooper's claim under this chapter would be untimely under the four-year residual period that applies when there is no express limitations period.  *See* Tex. Civ. Prac. & Rem. Code § 16.004.

Assuming again for the purpose of this Motion that Cooper began providing notice of the underlying asbestos claims on March 23, 2006, CNA would have been required to provide its "acceptance or rejection" of Cooper's claims by April 7, 2006.  At a minimum, this is the date by which Cooper "discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred."  Tex Ins. Code § 541.162.  And, in fact, Cooper's Rule 30(b)(6) witness testified that it had discovered CNA's putative malfeasance and that Cooper has

15

been putting CNA on notice of these lawsuits for many years. We have repeatedly tried to engage them in conversations for coverage and have either been denied or ignored. I think such a prolonged time of ignoring our requests for coverage probably satisfies whatever the elements are for that provision for bad faith or whatever it may be.

(Cooper Dep. 169:23-170:5.)[3]

The analysis is similar with respect to Cooper's Chapter 542 claim. Assuming for purposes of Cooper's Motion that Defendants did nothing in response to Cooper's tender of the defense in any claim, Defendants would have been required to accept or reject that claim within fifteen days of receipt. Tex. Ins. Code § 542.056(a). Therefore, any such claims tendered more than four years and fifteen days before Cooper filed this lawsuit would be barred by Texas' residual limitation period.

### F.    COOPER'S COUNTS III FAILS TO STATE A CLAIM UNDER TEXAS LAW TO THE EXTENT IT RELIES ON A "COMMON LAW" BAD FAITH THEORY

Count III of Cooper's Complaint, seeks recovery in part under a "common law" bad faith theory of liability. That claim fails under Texas law, which does not recognize such a cause of action in connection with third-party liability policies, like the CNA Policies. *See, e.g., Aranda v. Ins. Co. of North America*, 748 S.W.2d 210, 212 (Tex. 1988). The Fifth Circuit directly addressed this issue recently and

---

[3] CNA disagrees with Cooper's one-sided recitation of the interactions between CNA and Cooper in connection with the underlying asbestos claims, but accepts Cooper's view for purpose of this Response only.

held the same.  *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 520-21 (5th Cir. 2013).

> The *Eland Energy* court's analysis is dispositive.  There the court stated:

> > Under Texas law, an insurer owes a duty of good faith in handling its insureds own claim of loss." [The insured] sought coverage, however, for a third-party claim covered by its comprehensive general liability policy. **There exists no statutory cause of action for breach of the duty of good faith and fair dealing in the context of an insurer's handling of a third-party claim**.  The only previously recognized common law claim is for breach of the duty to settle a third-party claim within policy limits.

709 F.3d at 520-21 (citations omitted, bold and underline emphasis added).  To the extent Count III of Cooper's Complaint seeks to recover under a common law extra-contractual theory, Cooper may not recover on that claim, and this Court should enter judgment in CNA's favor.

> ### G.  COOPER'S CLAIMS ARE BARRED BECAUSE IT HAS FAILED TO COMPLY WITH THE CONDITION PRECEDENT OF THE PAYMENT OF PREMIUMS.

CNA's answer in this case pled a defense that Cooper has failed to fulfill the conditions precedent to CNA's contractual obligations to provide a defense and indemnity to otherwise covered claims because it has refused to pay the premiums that are due under the policies or to advance funds under the corresponding claims service agreements.  (Defs.' Answer and Affirmative Defenses to Pl.'s Compl. and

Countercls. at Twenty-Fifth Defense [Dkt. #22].)  That defense precludes Cooper's claims, and the Court should deny Cooper's Motion and grant summary judgment to CNA on Cooper's claims.

As explained in CNA's affirmative motion for summary judgment on these issues, the CNA policies include retrospective premium obligations and "claim service agreements" that require Cooper to either advance funds before CNA has an obligation to provide a defense or indemnity of a claim or pay a "retrospective premium" that will often be more than the amount CNA would expend in the defense or indemnity of a claim.  Under Texas law, "the payment of premiums is a condition precedent to the existence of liability of the insurer."  *Lombana v. AIG Am. Gen. Life Ins. Co.*, No. 01-12-00168-CV, 2014 Tex. App. LEXIS 2302, at *19 (Tex. App. – Houston [1st Dist.] Feb. 27, 2014); *Hartland v. Progressive Cty Mut. Ins. Co.*, 290 S.W.3d 318, 322 (Tex. App. – Houston [14th Dist.] 2009, no pet.). The requirement to advance monies under the Claim Service Agreement likewise is plainly a condition precedent under those contracts.  *See id.*

Cooper's Motion relating to Count I of CNA's Amended Counterclaims fails because it misstates the burden of proof relating to the payment of retrospective

premiums and also provides an incomplete picture of the record.[4]   The primary

CNA Policies contain retrospective premium endorsements that require Cooper to

pay additional premium when CNA pays claims.  This fact does not appear to be in

dispute.   As support for its argument, Cooper points to the fact that certain

retrospective premium cards have been marked "closed."   However, CNA's Rule

30(b)(6) witness made clear that the Cooper will still owe retrospective premiums

under the 1971-1975 policies, as well as under the 1979-1981 policies.

The Rule 30(b)(6) deposition of CNA states in relevant part as follows:

Q.     Mr. Caswell, you talked earlier about retrospective premiums,
self-insured retentions, et cetera, in the CNA program.  I want to
explore that for just a minute … Is it your understanding that the 1979
and 1980 policies still have open retros?

A.     That is my understanding.

Q.     And that the retros, any retro premiums for prior years are
closed?

A.     That's not my understanding.

Q.     Okay.   Tell me what your understanding is because you
mentioned you had a conversation with Mr. Fogle where you talked
about '79 and '80 policies.

A.     Right.   That was what Mr. Fogle was mentioning, so his
understanding was that '79 and '80 were open.  There are a group of
policies that I believe go from '71 through '75 that have retrospective
premiums that have not been maxed out.  And to the extent that there

---

[4] CNA directs the Court to its own summary judgment motion on Count I of the
Counterclaims, which explains in fuller detail the basis for CNA's entitlement to
summary judgment on the retrospective premium issue.  [Dkt. #66]

are claims and payments sought under those policies, the retrospective premiums would apply.

(CNA Dep. 46:12-47:12.)   Cooper does not contest that retrospective premiums will be due and owing under the 1979-1981 policies.   (Mot. at 17; Cooper Dep. 90:25-91:6.)   Thus, far from supporting Cooper's position, the record makes clear that CNA is entitled to judgment on at least a portion of the relief it seeks in Count I of its Counterclaims.

### H.   THE STATUTE OF LIMTATIONS DOES NOT BAR COUNTS II AND V OF CNA'S COUNTERCLAIMS

In Counts II and V of CNA's Counterclaims, CNA seeks recovery under breach of contract theories.   The "discovery rule" used in Texas cases precludes summary judgment under the applicable statute of limitations.   Additionally, questions exist as to when the breach of the policies' anti-assignment clause actually occurred.

Under Texas law, the "discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action."   *See, e.g., HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).   Texas courts have articulated two "unifying principles" that generally apply in such cases – "They are that the nature of the injury must be inherently

undiscoverable and that the injury itself must be objectively verifiable." *Id.* (citation omitted).

In this case, for example, the agreements between Cooper and Gardner Denver have been the subject of multiple amendments, up through 2002. Importantly, Cooper has taken the position in its motion to dismiss the Amended Counterclaims that it has *not* assigned the policies, but rather has simply assigned the proceeds under the policies.   (*See* Cooper's Mot. to Dismiss Am. Counterclaims [Dkt. #38].)   That said, Cooper's Rule 30(b)(6) witness refused to answer the question of whether Cooper assigned the CNA Policies to Gardner Denver.  (Cooper Dep. 144:15-144:19 (" … I'm not in a position to state on behalf of the company whether or not there was an assignment or whether it was valid or whether it was a breach of the policies because those are all legal questions.").) Following that non-answer, Cooper's counsel subsequently instructed the witness not to answer the question of whether there had been an assignment to Gardner Denver.  (*Id.* 145:12-145:13.)   Comparable testimony was given with respect to Cooper's putative assignment to Cooper Cameron.  (*Id.* 142:7-142:24.)

Lastly, even if the Court determines that the statute of limitations bars CNA's claims with respect to damages incurred in 2003, the statute could not bar any claims that relate to the damages suffered beginning in 2012, when CNA became embroiled in the Adams County, Illinois litigation.  *See Khan v. Trans*

*Chemical, Ltd.*, 178 Fed. Appx. 419, 424 (5th Cir. 2006) ("Thus, when TCL failed to pay the deferred salary and penalty due Khan on December 31, 1996, Khan's breach of contract claim *as to those damages* accrued." (emphasis added)). Under such circumstances, Cooper is not entitled to summary judgment that the statute of limitations bars Counts II and V of CNA's Counterclaims.

## I.   CNA HAS PRESENTED SUFFICIENT EVIDENCE TO DEFEAT COOPER'S CONTENTION THAT COUNTS III & IV OF THE COUNTERCLAIMS PRESENT NO ISSUE OF MATERIAL FACT

There is no basis for Cooper's contention that CNA must "identify facts" supporting Counts III and IV of the Counterclaims.  The Court should deny Cooper's Motion as to those counts on that ground alone.  Moreover, Cooper has produced a number of documents in discovery that bear on the issues set forth in Counts III and IV of the Counterclaims.

For example, in Count IV of its Counterclaims, CNA seeks a declaration that Cooper is not entitled to insurance coverage under policies of insurance issued to Studebaker Corporation; Worthington Corporation; Studebaker-Worthington, Inc.; McGraw-Edison Company ("Old McGraw"); and Crouse-Hinds Company.  (*See, e.g.,* Am. Countercls. ¶ 76 [Dkt. # 35].)  Cooper's Motion vaguely argues that CNA identifies no facts supporting Count IV.  (Motion at 19.)  This assertion is false.  The Amended Counterclaims themselves set forth in detail the bases for the

relief CNA seeks in Count IV.  (*See* Am. Countercls. ¶¶ 53-76 [Dkt. #35].)   In addition, Cooper has produced a number of documents in this litigation that bear on the topic, including documents that relate to Cooper's corporate relationship to Old McGraw.  (*See* Ex. F to Mertes Aff.)  Such documents bear directly on Count IV of the Amended Counterclaims.  In short, the Court should deny Cooper the relief its Motion seeks with respect to the Amended Counterclaims.

## V.   <u>CONCLUSION</u>

Wherefore, Defendants/Counter-Plaintiffs Continental Casualty Company; Transportation Insurance Company; and The Continental Insurance Company, as successor-in-interest to Harbor Insurance Company and successor by merger to Fidelity & Casualty Company of New York, respectfully request that this Court deny Cooper's Motion for Summary Judgment and grant judgment in favor of the Defendants/Counter-Plaintiffs.

Respectfully submitted,

*/s/ Andrew Love*
Howard L. Close
Attorney-In-Charge
State Bar No. 04406500
Federal Bar No. 13362
Andrew Love
State Bar No. 24007571
Federal Bar No. 23997
WRIGHT & CLOSE, L.L.P.
One Riverway, Suite 2200
Houston, Texas  77056
Telephone:  (713) 572-4321
Facsimile:  (713) 572-4320
close@wrightclose.com
love@wrightclose.com

**ATTORNEYS FOR DEFENDANTS/
COUNTER-PLAINTIFFS CONTINENTAL
CASUALTY COMPANY, THE
TRANSPORTATION INSURANCE
COMPANY, AND THE CONTINENTAL
INSURANCE COMPANY**

24

## <u>CERTIFICATE OF SERVICE</u>

On June 2, 2014, I caused this document to be filed with the Court's Electronic Case Filing system. Service of this document on known Filing Users will be automatically accomplished through the Notice of Electronic Filing. I am unaware of any party or counsel who is not a Filing User.

*/s/ Andrew Love*
Andrew Love

25