# EXHIBIT B

Case 4:13-cv-00575   Document 74-3   Filed on 06/02/14 in TXSD   Page 2 of 7

DANIEL P. CASWELL  30(b)(6), Confidential                    February 21, 2014
COOPER INDUSTRIES vs. CONTINENTAL CASUALTY                                  1

```
1              IN THE UNITED STATES DISTRICT COURT
2               FOR THE SOUTHERN DISTRICT OF TEXAS
3                        HOUSTON DIVISION
4    COOPER INDUSTRIES, LLC,         )
5    600 Travis Street, Suite 5600, )
6    Houston, TX 77002,              )
7              Plaintiff,            )
8         vs.                        ) CIVIL ACTION
9    CONTINENTAL CASUALTY COMPANY;   )No. 4:13-cv-00575
10   TRANSPORTATION INSURANCE        )
11   COMPANY; and THE CONTINENTAL    )
12   INSURANCE COMPANY, as           )
13   successor-in-interest to Harbor)
14   Insurance Company and successor)
15   by merger to Fidelity &         )
16   Casualty Company of New York,   )
17             Defendants.           )
18       THE CONFIDENTIAL 30 (b)(6) DEPOSITION
19   OF CONTINENTAL CASUALTY COMPANY, TRANSPORTATION
20   INSURANCE COMPANY, and THE CONTINENTAL INSURANCE
21   COMPANY
22                         by
23                DANIEL P. CASWELL
24           February 21, 2014, 9:02 a.m.
```



Case 4:13-cv-00575   Document 74-3   Filed on 06/02/14 in TXSD   Page 3 of 7

DANIEL P. CASWELL  30(b)(6), Confidential                February 21, 2014
COOPER INDUSTRIES vs. CONTINENTAL CASUALTY                             47

```
 1      Q.   Okay.  Tell me what your understanding
 2  is because you mentioned you had a conversation
 3  with Mr. Fogle where you talked about '79 and '80
 4  policies.
 5      A.   Right.  That was what Mr. Fogle was
 6  mentioning, so his understanding was that '79 and
 7  '80 were open.  There are a group of policies
 8  that I believe go from '71 through '75 that have
 9  retrospective premiums that have not been maxed
10  out.  And to the extent that there are claims and
11  payments sought under those policies, the
12  retrospective premiums would apply.
13      Q.   Okay.  What about the '75 to '79
14  policies?
15      A.   The '75 policy was a Fidelity &
16  Casualty policy.  And I'm not aware of any
17  retrospective premium on that, although there may
18  very well have been, given the nature of Cooper's
19  program.  I'm just not aware of it.
20           The policies between '76 and '79, my
21  understanding is that the retrospective premiums
22  have been maxed out on those policies, and
23  therefore, we no longer have retrospective
24  premiums that would apply to claims.
```

Case 4:13-cv-00575   Document 74-3   Filed on 06/02/14 in TXSD   Page 4 of 7

DANIEL P. CASWELL  30(b)(6), Confidential                February 21, 2014
COOPER INDUSTRIES vs. CONTINENTAL CASUALTY                              67

```
 1   claim that's still within the open retro, if the
 2   retro plan is not closed, he submits a claim --
 3        A.    Right.
 4        Q.    -- CNA defends the claim, pays the
 5   indemnity on the claim, it puts both of those
 6   dollars through the retro calculation, multiplies
 7   both of them by the tax multiplier and the loss
 8   conversion factor, charges back the
 9   policyholder.
10        A.    Correct.
11        Q.    And that goes into the calculation of
12   toward the max premium?
13        A.    Correct.
14        Q.    So those defense costs are not subject
15   to a cap, a per occurrence cap, they are subject
16   to the retro cap?
17        A.    They are subject to the retro maximum.
18        Q.    The maximum.  I'm sorry.  I keep
19   calling it a cap.  You keep calling it a max.
20        A.    That's okay.  I'm just trying to be
21   consistent with the terms that the retro people
22   use.
23        Q.    No.  That's fine.  So, for instance,
24   if CNA were paying defense on asbestos claims for
```



Case 4:13-cv-00575   Document 74-3   Filed on 06/02/14 in TXSD   Page 5 of 7

DANIEL P. CASWELL  30(b)(6), Confidential                February 21, 2014
COOPER INDUSTRIES vs. CONTINENTAL CASUALTY                             68

```
 1   Cooper, it would then -- your understanding if
 2   the retro period were still open, charge Cooper
 3   back and then apply those payments toward
 4   reaching the retrospective premium max?
 5        A.   That's my understanding.
 6        MR. GINSBERG:  Let me just put on the record
 7   that we would request that CNA provide us with a
 8   Plan D retro of the time period that is referred
 9   to in these documents.
10        MR. CAMERON:  I'm happy to search our
11   client's records to see if we can find a Plan D
12   if it has not already been produced and to
13   produce it.
14        MR. GINSBERG:  If it has been produced, just
15   tell us the number.
16        MR. CAMERON:  I'm actually trying to figure
17   that out right now.
18              (WHEREUPON, a certain document
19               was marked Exhibit No. 5, for
20               identification, as of 2/21/14.)
21   BY MR. GINSBERG:
22        Q.   Mr. Caswell, before we look at that
23   document, I just want to go back for one second
24   to Exhibit 1.
```



Case 4:13-cv-00575   Document 74-3   Filed on 06/02/14 in TXSD   Page 6 of 7

DANIEL P. CASWELL  30(b)(6), Confidential                    February 21, 2014
COOPER INDUSTRIES vs. CONTINENTAL CASUALTY                                 96

```
 1         Q.    You said that Cooper could have
 2   invalidated its coverage by not paying
 3   retrospective premiums, but just to be clear
 4   because we're on the record here, CNA hasn't
 5   submitted a retrospective premium bill to Cooper
 6   which Cooper hasn't paid, to the best of your
 7   knowledge, is that right?
 8         A.    I don't know of a bill that CNA
 9   submitted for retros that Cooper has not paid.
10         Q.    So there is no breach of a retro
11   obligation as we sit here today?
12         A.    Well, that depends.
13         Q.    What does it depend on?
14         A.    The retrospective premiums are
15   something that Cooper is obligated to pay under
16   the policies.  When they take the position that
17   they don't want to pay those retrospective
18   premiums, that's a premium.  The fact that it's
19   paid after the fact doesn't change the fact that
20   it's a premium, and so if Cooper is telling us
21   now something different than I understood, I'd be
22   happy to hear that.
23         Q.    But there is lots of if's in that.
24   What I'm asking is whether there is -- in fact,
```



Case 4:13-cv-00575   Document 74-3   Filed on 06/02/14 in TXSD   Page 7 of 7

DANIEL P. CASWELL  30(b)(6), Confidential                February 21, 2014
COOPER INDUSTRIES vs. CONTINENTAL CASUALTY                              97

```
 1   you know of a situation in which CNA has
 2   submitted a retrospective premium to Cooper for
 3   payment, and Cooper has refused to pay it.
 4        A.    Right.  And I answered that question.
 5   And I said I don't know of a retrospective
 6   billing that has gone to Cooper that Cooper has
 7   refused to pay.
 8        Q.    And if Cooper says, Look, CNA, we have
 9   the right under Texas law to pick which policies
10   we want to assign claims to, and we prefer not to
11   assign claims that have -- policies that have
12   open retrospective premiums, is that a breach of
13   any policy?
14        A.    We would dispute that.
15        Q.    But is it a breach of any policy?
16        A.    I'm not sure.  It strikes me as a
17   dispute.
18        Q.    Okay.  I'm just trying to get to what
19   your position is going to be at trial that Cooper
20   has voided its coverage because of its -- by
21   Mr. Fogle, for instance, saying as you've
22   testified, that he'd prefer not to assign any of
23   the claims to the '79 and '80 policies because
24   they have open retros.
```